AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)   ☐ Original   ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Central District of California



United States of America

v.

EMILIANO GARDUNO GALVEZ,

Defendant(s)

Case No. 2:25-MJ-03550-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date of June 7, 2025, in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 26 U.S.C. § 5861(d) | Possession of an Unregistered Destructive Device |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Matthew W Beals
Complainant's signature

Matthew W. Beals, Senior Special Agent
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: June 10, 2025

Judge's signature

City and state: Los Angeles, California

Hon. Jacqueline Chooljian, U.S. Magistrate Judge
Printed name and title

AUSA: Jenna W. Long (213-894-8692)

**AFFIDAVIT**

I, Matthew W. Beals, being duly sworn, declare and state as follows:

## I.  INTRODUCTION

1. I am a Senior Special Agent with Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"), United States Department of Justice, and have been so employed since September 2001. I am a graduate of the Criminal Investigator Training Program and ATF's New Professional Training instructed at the Federal Law Enforcement Training Center ("FLETC") in Glynco, Georgia. I earned Certified Fire Investigator ("CFI") credentials from ATF and the International Association of Arson Investigators ("IAA") in 2016, which required two years of continuous on the job training that covers a myriad of topics, all of which are related to fire and explosion investigations. I am currently assigned to the ATF Los Angeles Field Division's Arson/Explosives Group. My responsibilities include conducting complex post-fire and post-blast investigations, identifying the origins and causes of fires, identifying post-blast evidence, authoring origin and cause reports, conducting interviews, serving search and seizure warrants, analyzing and interpreting data obtained from legal process, making arrests, testifying in legal proceedings and teaching fire scene investigative techniques to private, local, state, federal and international investigators. I have received extensive training related to arson and explosive investigations, which includes the ability to identify explosive, incendiary, and destructive devices. I

have also provided training to public sector investigators related to the construction, use and collection of evidence involving destructive devices, which includes incendiary devices, for example, Molotov cocktails. During my employment with ATF, I have participated in several investigations involving individuals using explosive or incendiary devices. These investigations have included a variety of investigative techniques, including interviews, obtaining information from other law enforcement agencies, court-authorized searches of physical locations, as well as electronic devices and data retrieved from them, and the interception of wire and electronic communications, examining and preserving physical evidence, conducting surveillance, and reviewing financial, telephone, and other third-party records.

## II. **PURPOSE OF AFFIDAVIT**

1. This affidavit is made in support of a criminal complaint against, and arrest warrant for, Emiliano Garduno Galvez ("GALVEZ") for a violation of 26 U.S.C. § 5861(d) (Possession of an Unregistered Destructive Device).

2. The facts set forth in this affidavit are based upon my personal observations, my training and experience, and information obtained from various law enforcement personnel and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested complaint and does not purport to set forth all of my knowledge of or investigation into this matter. Unless specifically indicated otherwise, all conversations and statements described in this

affidavit are related in substance and in part only, all amounts or sums are approximate, and all dates and times are on or about those indicated.

### III. LEGAL BACKGROUND

3. Title 26, United States Code, Section 5861(d) provides that "[i]t shall be unlawful for any person . . . to receive or possess a firearm which is not registered to him in the National Firearms Registration and Transfer Record." Title 26, United States Code, Section 5871 further provides that "[a]ny person who violates or fails to comply with any provision of this chapter shall, upon conviction, be fined not more than $10,000, or be imprisoned not more than ten years, or both."

4. Destructive devices are considered firearms under Title 26, United States Code, Section 5845(a)(8).

5. Under Title 26, United States Code, Section 5845(f), "(1) [t]he term 'destructive device' means (1) any explosive, incendiary . . . bomb . . . or similar device . . . and (3) any combination of parts either designed or intended for use in converting any device into a destructive device as defined in subparagraph[] (1)."

6. Based on my training and experience, I know that to constitute a functioning incendiary device, the device must (1) be a breakable container; (2) contain a flammable substance; and (3) include a source of ignition, for example a wick or a fuse.

7. Based on my training and experience I know a Molotov cocktail is a hand-thrown explosive or incendiary weapon which consists of a breakable container with flammable liquid inside

3

and a fuse or wick that after lit can ignite the liquid vapors, thereby meeting the definition of "explosive or incendiary device" under 18 U.S.C. § 232(5).

8. Based on my training and consultations with the United States Code, I know that 18 U.S.C. § 844(h)(1) "whoever uses fire or an explosive to commit any felony which may be prosecuted in a court of the United States . . . shall, in addition to the punishment provided for such felony, be sentenced to imprisonment for 10 years."

9. The term "explosive" includes, among other things:

> [A]ny incendiary bomb or grenade, fire bomb, or similar device, including any device which (i) consists of or includes a breakable container including a flammable liquid or compound, and a wick composed of any material which, when ignited, is capable of igniting such flammable liquid or compound, and (ii) can be carried or thrown by one individual acting alone.

18 U.S.C. §§ 844(f), 232(5).

## IV. SUMMARY OF PROBABLE CAUSE

10. On June 7, 2025, after an unlawful assembly was declared following hours of violence directed at federal and local law enforcement personnel, an individual, later identified as GALVEZ, threw a Molotov cocktail over a stone wall in the direction of law enforcement personnel that were attempting to disband the unlawful assembly.

11. Following the incident, local law enforcement personnel stopped GALVEZ approximately a block away, but ultimately released him without arrest. As discussed below, GALVEZ was arrested yesterday for being illegally present in the

United States. Based on my review of photographs showing identifiable tattoos on GALVEZ's right hand and video of the incident, I was able to identify GALVEZ as the individual who threw the Molotov cocktail on June 7, 2025.

### V. STATEMENT OF PROBABLE CAUSE

12. Based on my review of law enforcement reports and video files, from speaking with other law enforcement personnel, and reviewing media coverage, I know the following:

   a. On June 7, 2025, at approximately 7:15 p.m., in Paramount, California, which is within the Central District of California, Los Angeles Sheriff's Department ("LASD") deputies were in the vicinity of the intersection of Alondra Boulevard and Hunsaker Avenue. LASD responded to the location earlier in the day to come to the aid of federal agents after a large group of individuals had collected where federal agents were preparing for immigration enforcement operations. At the time, there were personnel from multiple federal agencies including Immigration and Customs Enforcement ("ICE") and the United States Marshal Service.

   b. As time progressed on June 7, the crowd began to engage in acts of violence directed at law enforcement personnel. The crowd began by yelling at the federal authorities and throwing objects at them. As reported by the news media that I have seen or read, the nearby Home Depot closed, and for several hours the gathered individuals threw rocks or other objects at the federal authorities, started fires, set off

5

fireworks (including fireworks aimed at law enforcement), and blocked the road with shopping carts and other items.

    c.   At approximately 4:00 p.m., officials declared an unlawful assembly in the area, which required the crowd to disburse. At approximately 7:00 p.m. this was ongoing with large crowds in the area.

    13.  Based on my review of reports, at approximately 7:15 p.m., an individual wearing all black threw a Molotov cocktail over a fence where LASD deputies were engaging in crowd control activities. According to reports, the individual ran southbound on Hunsaker Avenue.

    14.  I have reviewed the report from an LASD deputy who observed a person running southbound on Hunsaker Avenue wearing a black shirt, black pants, and black shoes, approximately one block south of where the Molotov cocktail had been thrown. According to the report, the LASD deputy pulled his marked vehicle with its lights on ahead of this individual, got out of his vehicle and ordered the individual to stop. The individual did not comply with the deputy's order and continued to run. Several additional deputies responded to the area and assisted in stopping this individual.

    15.  According to the deputy who stopped the individual, he identified the individual as GALVEZ. According to the address that GALVEZ gave the deputy, GALVEZ lives approximately one-half mile from the Home Depot described above.

    16.  I have viewed a video of news coverage showing the vicinity of Alondra Boulevard and Hunsaker Avenue in Paramount

California on June 7, 2025. I recognize the area depicted in the video as the intersection of Alondra Boulevard and Hunsaker Avenue in Paramount, California. In front of the barricade established by the deputies on Alondra Boulevard, near the intersection, the video shows a large group of individuals continuing to engage in the declared unlawful assembly. I have also viewed video surveillance from residential houses in the same area around the same time, which show individuals throwing objects and setting off fireworks from the south side of a stone wall along Alondra Boulevard over to the north side of the wall where LASD deputies were located.

    17. In the news video, I also saw an individual dressed in a black hooded sweatshirt, black pants, black shoes, with a black face mask covering his face from his

//
//

nose down, holding what appeared to be a Molotov cocktail in his hand, as shown below:



18.  I believe the item the individual was holding to be a Molotov cocktail because it appeared to be a glass bottle with liquid inside, as well as a wick or fuse, thereby constituting a destructive device pursuant to 26 U.S.C. § 5845(f) and an "explosive or incendiary device" pursuant to 18 U.S.C. § 232(5).

19.  In the video, the individual with the Molotov cocktail stands behind a tree with the Molotov cocktail near his feet or in his hand on more than one occasion over the span of several

//
//

8

minutes. I also saw the individual with a lighter in his right hand, as shown below:



20. After the individual moved to stand behind another tree, while concealing the Molotov cocktail behind his back, the video shows the individual with his hands in his pockets move even closer to the line of LASD deputies.

21. Shortly thereafter, the video shows the LASD deputies start to move the crowd east, away from the Home Depot. At this point, the individual (who had been holding the Molotov cocktail a few minutes before) move east with the crowd along a stone wall on Alondra Boulevard. As the individual arrived at the end of the stone wall, with LASD deputies still advancing in the area, the camera angle moves and when the camera angle returns to show the same area, the individual is no longer visible. Within approximately five seconds of losing sight of this individual, the video shows an object on fire come from behind the stone wall (a short distance away from where the wall ends).

As the object on fire falls onto the grass, approximately ten feet away from deputies, the video shows what I believe to be the wick or fuse separate from a clear bottle. The wick or fuse lands on the grass, where a fire is visible. The object on fire and where the wick lands and ignites grass is pictured in the below two photographs:




22.    I have also viewed video recording from surveillance video from one of the residential houses on the south side of the stone fence depicted in the above photographs. In this residential surveillance video, I recognize the individual pictured above in a black hooded sweatshirt, black pants, black shoes, and a black face mask come around the end of the wall.[1] I then see this individual bend down behind a car, and throw an object lit on fire over the wall within a few seconds of coming behind the wall. This location corresponds to the same location of the wall that the above pictures show from the north side

---

[1] The timestamp on this video says it was recorded on June 7, 2025, at 18:15 (6:15 p.m.), however, based upon the other people and actions depicted in the video, it appears to have been recorded at the same time that I described above when LASD deputies were advancing east on the north side of the wall.

when an object on fire lands in the grass. The individual then briefly ran east on Alondra Boulevard (a smaller street that shares the name of the larger street just north of it) before going out of sight of the video in the direction of Hunsaker Avenue.

23. According to an LASD detective, he recovered a burnt wick or fuse from this area, where he saw burnt grass.

24. The individual I saw in both the above-described videos matches the physical build of GALVEZ based on the description of the deputy who interacted with him when he was running south from the area, namely that he is a light-skinned male Hispanic, approximately 5'6", slight build, dressed in black shoes and black pants. When he was stopped by deputies GALVEZ was wearing a black shirt, black pants, and black shoes, but deputies did not see the black hooded sweatshirt or face mask shown in the video. Based on my training and experience, it is common for an individual fleeing the scene of a crime to remove clothing that may identify them and is easily removed while running, for example, a sweatshirt and a face mask.

25. In addition to GALVEZ's physical appearance matching the individual who threw the suspected Molotov cocktail, I was also able to identify GALVEZ based on identifiable tattoos he has on his right hand. I have seen a photographs of tattoos on GALVEZ's right hand that were taken when he was arrested by

immigration authorities on June 9, 2025,[2] and they appear to be the same tattoos visible on the video of the individual holding a Molotov cocktail described above. On the left below, is a photograph of the individual I observed holding a Molotov cocktail on the video recording. On the right is a photograph of GALVEZ's right hand and wrist tattoos taken on June 9, 2025.

 

26. According to my review of records maintained by the Department of Homeland Security, on or about December 9, 2014, GALVEZ entered the United States at the port of entry in San Ysidro, California on a B-2 non-immigrant visa (commonly referred to as a tourist visa). As such, he was permitted to stay until June 8, 2015. Based on my review of records maintained by United States Citizenship and Immigration Services, no applications to permit him to stay within the United States have been made by him or on his behalf. Based on

---

[2] As explained in paragraph 25, as a result of overstaying his visa, GALVEZ is unlawfully present in the United States. On June 9, 2025, Homeland Security Investigations within the Department of Homeland Security arrested GALVEZ for being unlawfully present in the United States.

the foregoing and according to the Department of Homeland Security, I believe GALVEZ has no lawful authority to be present in the United States.

27. I have reviewed GALVEZ's criminal history, which includes two arrests in 2024, one for theft and resisting an officer in April 2024, and the other for driving under the influence and a hit and run involving property damage in September 2024, which appears to still be pending and during which a warrant was issued.

28. On June 10, 2025, I conducted a query in the National Firearms Registration and Transfer Record for GALVEZ based in his name and date of birth. No results were found, meaning no destructive device has been registered to GALVEZ.

## VI. CONCLUSION

29. For all the reasons described above, there is probable cause to believe that GALVEZ violated 26 U.S.C. § 5861(d) (Possession of an Unregistered Destructive Device).

Attested to by the applicant in
accordance with the requirements
of Fed. R. Crim. P. 4.1 by
telephone on this 10th day of
June, 2025.

_____
HONORABLE JACQUELINE CHOOLJIAN
UNITED STATES MAGISTRATE JUDGE